Spencer v. Blanck's Transfer & Storage Co. et al.

*H. L. Abrams*, for claimant.

*James J. Burns, Jr.*, for defendants.

KENNEDY, J., July 3, 1942.—This is an appeal from the Workmen's Compensation Board which disallowed an award to claimant, Willard G. Spencer. The evidence discloses that claimant, aged about thirty-eight, whose customary occupation was that of truck driver and meat deliverer for Armour Company, had accepted employment with the Blanck's Transfer & Storage Company during his vacation period as a furniture mover. He commenced this employment on April 28, 1941. On May 1, 1941, the claimant, with four fellow-employes, had carried a baby grand piano weighing approximately eight hundred pounds into a house intending to place it on the second floor. It was ascertained half way up the staircase that there was not sufficient clearance and it was decided to take the piano back to the truck. While carrying it down the staircase claimant observed that it was not being carried on an even keel because of the inexperience of one of the men and he took a new hold on the grip to try and get it level, at the time shifting his weight and carrying his

part of the load with one hand. He testified that he felt a sudden burning sensation in his left groin but continued to help for a very brief interval. No effort on his part was required in reloading the piano back on the truck. His testimony further is to the effect that there were other goods on the truck to be delivered and that at the time they were about an hour's drive from the warehouse. Claimant on occasions did light work, such as lifting bedding, chairs, etc., although in distress. At the warehouse he admits that he did help to lift from the truck a rather heavy dresser which was the only heavy work he claims he performed after feeling the pain in his left inguinal region. The pain was getting more severe, especially after participating in the handling of the heavy dresser. Claimant then examined himself and noticed a lump in the left groin and immediately reported the situation to the manager of defendant company, who ordered him to the hospital. The testimony of Dr. Coscia is that claimant was suffering from a moderate-sized hernia in the left inguinal region and that the operation disclosed an enlarged external inguinal ring. Compensation was denied to claimant by the referee and the board, finding that he had not met the burden of proof required by section 306($h$) of The Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520. The main reason for denying compensation was that plaintiff did not prove "the manifestations were of such severity as to warrant immediate cessation of work." Section 306($h$), supra, reads as follows:

"Hernia shall be considered as a physical weakness or ailment, which ordinarily develops gradually, and shall not be compensable, unless incontrovertible proof is offered that the hernia was at once precipitated by sudden effort or severe strain and that: first, the descent of the hernia followed the cause without intervening time; second, there was actual pain in the hernial region at the time of descent; third, the above

manifestations were of such severity that the same were noticed at once by the claimant, necessitating immediate cessation of work, and communicated to the employer or a representative of the employer within forty-eight hours after the occurrence of the accident."

The section of The Workmen's Compensation Act involved in this appeal has been judicially determined by three lower courts. In this court, in the case of Levitin v. Belmar Moving & Storage Co., 43 D. & C. 147, 89 Pitts. 575, on November 29, 1941, Ellenbogen, J., speaking for the court, reviews prior decisions. In that case also claimant suffered a hernia while lifting a piano. He reported the incident to his foreman but continued to do regular light work for four or five hours after the descent of the hernia. The syllabus of that case (89 Pitts. 575) reads as follows:

"On appeal in a workmen's compensation case, the order of the board, reversing the referee and refusing compensation for hernia resulting from the lifting of a piano, was reversed and the award reinstated and judgment entered for claimant without a reference back to the board, where there was no dispute about the facts and about the amount of compensation involved.

"The compensation board was in error, when it disagreed with the referee about the interpretation of section 306(h) of the act of 1939. The board was of the opinion that under that section, compensation could not be allowed, unless the manifestations of the hernia were so severe that the claimant immediately ceased working.

"There was an accident within the meaning of the compensation act, where claimant, while straining to get up his corner of a piano into a moving van, felt something tear and drop in his groin. A fellow workman had to change his grip and assist him. As the claimant straightened up, he felt nauseated and felt a pain in his stomach and side. He did no more heavy

work but returned to the warehouse where he did his regular light work of checking in furniture.

"The act of June 21, 1939, P. L. 520, indicates the intent of the legislature to make recovery in hernia cases more difficult and to confine it to cases where the manifestations were of such severity that they were noticed at once. 'At once' is a stronger term than the word 'immediately', used in the Act of April 13, 1927, P. L. 186.

"Interpreted in a reasonable way, the clause in question means . . . that they would necessitate cessation of work as soon as reasonably feasible. Cessation of work does not necessarily mean cessation of all work. It means cessation of the work which caused the hernia and which the claimant was doing at the time."

In the case of Scull v. Blosinski, 43 D. & C. 428, claimant while lifting a garbage receptacle weighing about eighty pounds, in an awkward and unbalanced position, suffered severe pains in his groin. He attempted to lift another receptacle later but was unable to do so. He then changed places with his helper on the garbage truck and drove the truck for five hours after the accident occurred, when he reported it at the end of the day's work, and on consulting a doctor it was learned that he had suffered a hernia and that an operation was necessary. The referee and the board in that case, as in this instant case, disallowed an award because there was not sufficient evidence in their opinion that the injury was of such a severe nature as to necessitate the immediate cessation of work. MacDade, J., of the Thirty-second Judicial District, Delaware County, in reversing the board, stated the following (p. 436) :

"The board erred in construing the expression 'cessation of work' to mean 'cessation of all labor.' The word should be construed to mean the work which the complainant was engaged in immediately prior to the accident.

"The word 'immediate' should have a liberal construction. This word has been many times before the court."

In the case of Leight v. Uhl Const. Co., 27 Dept. Repts. 1769, Braham, P. J., of Lawrence County, discusses the judicial meaning of "cessation of work." We are in full agreement with his reasoning and reaction, which is as follows:

"Curiously enough, the Board seems to rest its view upon his continuing to carry the door rather than upon his resting for only ten or fifteen minutes. In either case we hold this to be too strict an interpretation of the statute. It is not in the nature of a good workman to yield at once. Many a man would consider it a point of pride not to drop the burden in his hands and throw it upon other men, forcing himself to stagger along with his burden to the end of the carry. Nor do we believe the limited period during which work was ceased is necessarily fatal. To a working man his wages mean everything. It is not only for himself but for his family that he strives. Consequently many a man continues work or attempts to do so when he should stop immediately. If it is the correct view that the employee must cease work and go home upon the onset of pain from hernia, why does the concluding language of the statute require him to communicate the fact of his injury to his employer not at once but within forty-eight hours? If it were the intention of the Legislature to require the employee to quit and go home at once then would be the time for him to tell his employer why he was quitting work."

Judge Baldridge in the case of Sussick v. Glen Alden Coal Co., 108 Pa. Superior Ct. 593, 597, in discussing the word "immediate" with relation to a hernia case, says the following:

" 'Immediately,' in the sense used in this statute, should not receive such a literal interpretation as to require a hernia to be noticed instantly by a claimant. It would be a too-strict construction, and not within the

legislative contemplation, to require an injured person to examine himself the very moment he experiences a sudden pain to ascertain if a hernia is present. It clearly appears that the claimant's physical effort was the primary or proximate cause of his injury, as there was an uninterrupted relation between the cause and effect. Within two hours after the alleged accident, and at the first reasonable opportunity, he examined himself and observed the lump. That brought him within the requirements of the statute."

The case of Ritter v. The Preferred Masonic Mutual Accident Association of America, 185 Pa. 90, was not a compensation case involving a hernia but had to do with the interpretation of an accident insurance policy. The Supreme Court in that case adopted the judicial definition of "immediate" which is distinguished from "instantaneous." The syllabus of that case reads as follows:

"In an action upon a policy of accident insurance, where it appears that the policy insures against loss of time resulting from bodily injuries which shall 'independently of all other causes immediately, wholly and continuously disable' the insured, it is not error for the court to charge that the word 'immediately' does not mean instantaneously, but that it means that the disability must have resulted within a reasonable time after the injury, and that such reasonable time would be, under the circumstances of the case, three or four days."

See also Borodaeff v. Province Line Dairy, Inc., 110 N. J. L. 20.

Doctor Coscia, who performed the operation on claimant, gave as his opinion that the hernia was acquired and not congenital, or as a result of a physical weakness or ailment which developed gradually, and further expressed his opinion that the descent of the hernia was caused by the strain in lifting the piano as described by claimant. Because the referee and the board disallowed an award to claimant no findings of fact were

made as to the length of his total and partial disability. Claimant returned to work on August 18, 1941, fully recovered. Our conclusion is that the board placed a too narrow construction on that part of section 306 (*h*) "necessitating immediate cessation of work," and that under all the evidence an award should have been granted to claimant. It, therefore, follows that the exceptions must be upheld and the appeal sustained. It will require, however, that the record be returned to the board to make competent findings of fact determining the amount of compensation that claimant is entitled to.

### Order

And now, July 3, 1942, after argument and review of briefs of counsel for claimant and for defendants it is ordered that the appeal ex parte claimant be and the same is hereby sustained. It is further ordered that the record be remanded to the Workmen's Compensation Board to grant an award to claimant, based on the evidence and consistent with the opinion filed herewith.