**PROTECTIVE LIFE INS. CO. v. HALE.**

6 Div. 609.

Supreme Court of Alabama.

March 28, 1935.

Rehearing Denied May 2, 1935.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellant.

Taylor & Higgins, of Birmingham, for appellee.

BROWN, Justice.

By the group policy, issued to the Pioneer Insurance Club of the Republic Iron & Steel Company's employees, December 1, 1929, and the certificate of insurance issued to plaintiff, the defendant engaged to pay to the beneficiary designated by the plaintiff, and named in the policy, $2,000 in the event of plaintiff's death while the policy was in force, and, also, "If any member insured under this policy shall furnish this company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, the company *will pay to such member*

*in full settlement of all obligations hereunder as to such member's life, the amount of insurance in force hereunder on such member at the time of the approval by the company of the proofs as aforesaid.*" (Italics supplied.)

The events which mature the policy, according to its provisions, are the death of the insured or his total permanent disability within the meaning of its total disability clause. McCutcheon, as Guardian, etc., v. All States Life Ins. Co. (Ala. Sup.) 158 So. 729. The total disability clause in the policy sued on is in the exact language of the total disability clause involved in McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349, and reaffirmed in the McCutcheon Case, supra.

Count A of the complaint, on which the case was tried, after setting out in hæc verba said total disability clause, avers: "That on, to-wit, the 5th day of June, 1932, while plaintiff was a member of said Pioneer Insurance Club, and while plaintiff was one of the members of said Club, insured under said policy of insurance, and while plaintiff was, to-wit, 42 years of age, and while said policy of insurance was in force and effect as to the plaintiff by reason of the payment of the premiums due thereon for plaintiff's insurance, plaintiff became totally and permanently disabled by reason of bodily injury, to-wit, injuries to his right leg, back and other parts of his body, to such an extent that plaintiff was, and at all times since said date has been and will at all times in the future be, wholly prevented thereby from engaging in any gainful occupation. And plaintiff avers that on, to-wit, the 15th day of March, 1933, *while another group policy of insurance*, issued by the defendant to the members of said Pioneer Insurance Club in lieu of said policy of insurance, was in force and effect as to plaintiff by reason of the payment of the premiums due thereon for plaintiff's insurance, and while plaintiff was so totally and permanently disabled as aforesaid, the plaintiff did furnish to the defendant due proof of such disability, and that defendant, after receiving said proof and after plaintiff's demand therefor, failed or refused to pay to the plaintiff the amount of insurance in force under said group policy insurance on the life of the plaintiff at the time of the receipt by the defendant of said proof, to-wit, Two Thousand Dollars ($2,000.00)." (Italics supplied.)

The defendant demurred to this count on the ground that it does not aver that the policy, the basis of this suit, was in force and effect at the time plaintiff furnished proof of his disability, and the demurrer was overruled.

In McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349, involving the quoted provision in a policy issued by the defendant on the same date and to the same club the policy in suit was issued to, it was ruled that the furnishing of proof of disability by the insured to the company while the policy was effective and the insurance in force was a condition precedent to liability. The holding in that case was reaffirmed in McCutcheon, Guardian, etc., v. All States Life Insurance Company, supra.

The provisions of a policy of different import were considered in Ex parte Gilbreath Gray (Prudential Ins. Co. v. Gray), 159 So. 265 (Ala. Sup.), from which McGifford's Case was differentiated. See, also, Bergholm et al. v. Peoria Life Ins. Co., 284 U. S. 489, 52 S. Ct. 230, 76 L. Ed. 416.

The furnishing of proof of total and permanent disability while the policy sued on was effective and the insurance was in force as to plaintiff, being a condition precedent to liability, the plaintiff had the burden of averring and proving performance of the condition. Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59; 13 C. J. 635, § 705; Marsicano v. City of Birmingham, 165 Ala. 405, 51 So. 608.

When the averments of count A are construed most strongly against the pleader, the averment that plaintiff "on, to-wit, the 15th day of March, 1933, *while another group policy of insurance*, issued by the defendant to the members of said Pioneer Insurance Club in lieu of said policy of insurance, was in force and effect as to plaintiff by reason of the payment of the premiums due thereon for plaintiff's insurance, and while plaintiff was so totally and permanently disabled as aforesaid, the plaintiff did furnish to the defendant due proof of such disability," falls short of showing that such proof was furnished under the policy in suit, or that the insurance which he seeks to recover was in force when such proof was so furnished. (Italics supplied.)

Assuming that group policy No. 180–G, certificate No. 1762, issued to the Pioneer Insurance Club, December 1, 1932, was in fact a renewal of the former group policy No. 149–G, certificate No. 1762, continuing in full force the insurance on plaintiff's life, with total permanent disability benefits, it is clear that plaintiff failed of compliance with the provision of the policy in respect to proof.

Plaintiff testified, "I asked the defendant for blanks for making claim under my policy. They supplied them to me. Dr. Carraway filled them out and I filled out one myself. * * * I turned them over to Protective Life Insurance Company * * * the defendant in this case"; that they (Protective Life Insurance Company) had not paid him anything; "I believe I turned them over to the defendant about the first day of February last year (1933). I received this letter after I turned the papers in."

The letter was written on a letterhead of "Protective Life Insurance Co., S. F. Clabaugh, Pres., Birmingham, Alabama," addressed to "A. L. Fairley, Secretary" and "Mr. Tom A. Hale" in respect to "G–180–1762," and read:

"We have given careful consideration to your claim for total and permanent disability benefits but the information furnished is not at all conclusive that your present condition is permanent. We would refer you to the clause in your group certificate wherein it must be shown that a disability must be total and must also be permanent before the benefits are available. In view of this, the company is obliged to disallow the claim.

"It is expressly stipulated that by pointing out the above facts the company does not waive, and hereby expressly reserves the right to avail itself of all other defenses it may have to said policy.

"Yours very truly,
"A. L. Fairley, Secretary."

The plaintiff also offered as evidence the defendant's answers to interrogatories propounded under the statute. The answer relative to the proof of total permanent disability is: "On March 15, 1933, plaintiff furnished defendant with completed forms, which forms are used to make proof of total and permanent disability, but the forms as completed and furnished by plaintiff did not show that he was totally and permanently disabled. One form was signed by plaintiff in which he stated that he did not know whether his disability presumably would continue for life, and one form was signed by an attending physician in which it was stated that the plaintiff would completely recover. These are the only proofs furnished by the plaintiff."

This is all the evidence showed or tended to show on the question of plaintiff's furnishing proof of his disability. When it is viewed in its light most favorable to the plaintiff, it is clearly insufficient as showing that plaintiff furnished "due proof" that plaintiff had become "totally and permanently disabled by bodily injury or disease," and that he was then or would be "at all times thereafter, wholly prevented thereby from engaging in any gainful occupation" within the meaning of the policy, and it was wholly insufficient to warrant the jury in so finding. Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59.

Whether it be the death of the insured or his total disability that matures the contract, the insurer is liable for the full amount of the insurance; in this case $2,000.

In the respect just stated, the policy in the instant case is different from the policies considered in cases heretofore decided by this court involving clauses insuring against "permanent total disability."

In United States Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462, the basis of the suit was an accident insurance policy providing "for the payment to the insured of $25 per week for total disablement, and of $12.50 per week for partial disablement." The question of *permanent total disability* was not there involved.

Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909, 910, was an action on an accident policy insuring the plaintiff against injuries by accident which "shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to *his occupation, and during the period of such continuous disability*," and for such disability agreed to pay a weekly indemnity. (Italics supplied.)

The Perryman and Plaster Cases hold that "to constitute 'total disability' in the connection used in the policies there under consideration, it is not necessary that an injury should render the insured physically unable to transact any kind of business pertaining to his *occupation*, but it is sufficient if the injury is such that common care and prudence require him to desist." (Italics supplied.)

Ellis v. New York Life Ins. Co., 214 Ala. 166, 106 So. 689, 691, was an action on a policy of life insurance, and permanent total disability from bodily injury or disease, "so that he is and will be *presumably* thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than 60 days * * * then. * * * One year after the anniversary of the policy next succeeding the receipt of such proof, the company will pay the insured a *sum equal to one-tenth* of the face of the policy and a like sum on each anniversary thereafter during the life

time *and continued disability.*" In that case it was held that the holdings in the Perryman and Plaster Cases did not apply, and a judgment on a directed verdict for the defendant was affirmed.

In New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753, 754, the action was on a policy of life insurance in all respects the same as that involved in the Ellis Case. The evidence showed that the plaintiff was a physician; that he owned a farm; and that he was physically unable to do manual labor. It was there held: "If the insured's physical condition, as a result of the disease, is such that common care and prudence requires that he desist from *transacting business,* and his condition is presumably permanent and continuous, he is permanently and totally disabled, within the meaning of the contract, though he may not be physically disabled to perform *occasional acts* connected with his *business, profession, or occupation.*" (Italics supplied.)

The plaintiff in Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 708, 79 A. L. R. 852, was a physician, and the action was to recover "the monthly benefits or income alleged to be due for 'total and permanent disability' by reason of disease." By the policy the defendant engaged to pay "a monthly income of $10.00 for each $1,000.00 of insurance." In the policy the insurer reserved the right to require proof from time to time of continued total disability and stipulated that: "If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease."

The sole question in that case was whether or not the plaintiff's condition prevented him from "doing substantial and profitable work in his profession." The trial court had directed a verdict for the defendant which was followed by judgment, and this judgment was affirmed.

New York Life Insurance Co. v. Torrance, 224 Ala. 614, 141 So. 547, like the Blue Case, was an action by the insured, a physician, to recover monthly benefits stipulated for in case of total permanent disability, to be paid during the continuance of such disability. In that case there was no question as to the plaintiff's total and permanent disability at the time suit was brought, but the question was whether or not the disability arose before the plaintiff reached the age of sixty years. While there was a general discussion of the authorities, it appears from the headnotes of the case, as well as from the body of the opinion, the court did not undertake to lay down any formula as to what was necessary to constitute total and permanent disability under that contract. The holding was, that plaintiff, by the undisputed evidence, had failed to show that his disability antedated his sixtieth birthday, and therefore the defendant was entitled to the affirmative charge.

On the second appeal in the Torrance Case, 228 Ala. 286, 153 So. 463, where the same question was involved as in the first appeal, it appeared from the opinion of the Court of Appeals (153 So. 458) the plaintiff on the second trial had offered additional evidence on which the Court of Appeals held the case was for the jury. Reviewing the opinion of the Court of Appeals, on certiorari, it was observed: "The terms of the policy are that total disability must be such as that it 'thereby permanently and continuously prevented (him) from engaging in any occupation whatsoever for remuneration or profit.' *If his physical or mental condition was such that his attempt to engage in an occupation was not accompanied with the ability to do so in its substantial features with the skill and accuracy which such business demands, in the usual and customary manner, he is totally disqualified from pursuing that occupation, though he does undertake to carry it on, but, in doing so, such want of skill and ability are manifest.*" New York Life Insurance Co. v. Torrance, 228 Ala. 286, 153 So. 463, 464. [Italics supplied.] This utterance was approved in the more recent case of Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59.

The policy, the basis of the suit in Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198, 199, insured the life of the plaintiff for $3,000, and carried a provision for "total and permanent disability" upon proof of which the insurer agreed to waive further payment of premiums and pay the insured "Fifty Dollars ($50.00) per month *during the period of his said total and permanent disability,*" a provision quite different in legal effect from the provision for total and permanent disability in the case at bar. The court, in treating the refusal of certain special charges, observed: "This court, in passing on provisions in policies *similar to the one involved,* has followed the majority rule to the effect 'that the "total disability" contemplated in insurance policies does not mean, as its strict literal construction would require, *a state of absolute helplessness,* but

means inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner.'" (Italics supplied.)

■■ The "majority rule" therein referred to, to state its general effect, is that insurance contracts subject to more than one construction are construed against the insurer and favorably to the insured, though the full lexicographical significance of words must be ignored. However, this rule does not authorize courts to rewrite the contract for the parties or refine away the terms of the contract expressed with sufficient clearness to convey the intent and meaning of the parties. New York Life Insurance Co. v. Torrance, 224 Ala. 614, 141 So. 547; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349; 14 R. C. L. 926, § 103; Pennsylvania Fire Ins. Co. v. Malone et al., 217 Ala. 168, 115 So. 156, 56 A. L. R. 1075; North River Ins. Co. of City of New York v. Waddell, 216 Ala. 55, 112 So. 336, 52 A. L. R. 838; R. C. L., 8 Per. Supp. p. 3708, § 103; Pocket Ed. 8 R. C. L. Per. Supp. p. 979, § 103.

The effect of the holding in John Hancock Mut. Life Ins. Co. v. Beaty (Ala. Sup.) 162 So. 281, is that proof showing "total permanent disability to perform the work of the occupation followed through life, and, so far as appears, *the only profitable occupation for which she [plaintiff] is suited by training and experience, is the disability covered by such policies.*" (Italics supplied.)

■ The manifest intent of the contract in this case is that the total permanent disability maturing the contract must be such as to disqualify him, not only from engaging in the occupation, trade, or profession he was engaged in when the disability developed, but he must be physically disabled from doing and performing the substantial features of any gainful occupation, within the range of his mental and educational capacity, with the required skill and accuracy of any such occupation, and such disability must be presumably permanent and continuous. 1 C. J. pp. 465, 466, §§ 167, 168, and 169; Metropolitan Life Ins. Co. v. Foster (C. C. A.) 67 F.(2d) 264.

■ The evidence in this case shows that the only disability suffered by the plaintiff was a broken leg, above the knee, with delayed union of the broken bone, and flabby muscles from nonuse and sensitive sciatic nerve; but the testimony of the medical witnesses is to the effect that the bone has completely united and healed, and by use his recovery will be permanent and complete, except his leg will be short. The extent of his disability, according to the medical testimony, is about 35 per cent.

In these circumstances, the plaintiff shows only partial permanent disability, and was not entitled to recover. Metropolitan Life Ins. Co. v. Blue, supra; Ætna Life Insurance Co. v. Lasseter, 153 Ala. 630, 45 So. 166, 15 L. R. A. (N. S.) 252.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur in the opinion.

KNIGHT, J., concurs in so much thereof as holds that the complaint was subject to demurrer, that the plaintiff did not show compliance with the condition precedent as to furnishing proof, and that defendant was entitled to the affirmative charge, and dissents as to what constitutes total disability; his view on that point being hereinafter stated.

THOMAS, J., dissents.

THOMAS, Justice (dissenting).

The trial was had on count A, added by way of amendment, declaring on a group policy of insurance.

Provisions of the policy exhibited by that pleading are: " 'If any member insured under this policy shall furnish this company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, the Company will pay to such member in full settlement of all obligations hereunder as to such member's life, the amount of insurance in force hereunder on such member at the time of the approval by the Company of the proofs as aforesaid.' "

Defendant pleaded in short by consent, "not indebted"; that "plaintiff did not furnish the defendant with proof that he was totally and permanently disabled while the group policy, which insured him against total and permanent disability, was in force."

The proofs made on the company's forms furnished by it on application of the plaintiff, for the purpose of giving the required

formal notice, were not offered in evidence. It is admitted that plaintiff filed with defendant such proofs made by himself and a physician. He was claiming for disability under the contract. The policy required that he "furnish the company with *due proof*." It has been held that such a statement of facts, reasonably verified, as if established in court, would prima facie require payment of the claim. Carson v. New York Life Ins. Co., 162 Minn. 458, 203 N. W. 209; Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59; 33 C. J. § 665; 14 R. C. L. 507; Joyce on Insurance, § 3290. I am not impressed, under the evidence before us, that the notice given was not sufficiently formal and informing as to amount to a failure to give defendant "due proof" of his disability.

Appellant urges that the group policy had been canceled on December 1, 1932, and a second group policy substituted therefor is fatal to plaintiff's action for disability, theretofore occurring on the 5th day of June, 1932; and cites in support of this contention, McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349. That case is wholly different from the facts of the instant case and the policy declared upon. It is required of this plaintiff to show membership in the Pioneer Insurance Club, to show payment of all subsequent dues to the date of disability, continued membership in good standing in the Pioneer Insurance Club as an employee of the Republic Iron & Steel Company, and that due proof was given, or waived. It is uncontradicted that plaintiff was in good standing and all dues paid; that he continued as a member in good standing of that club and gave defendant notice of his injury while he was insured under the master policy in force with defendant. The latter (defendant) replied by letter, denying liability on the ground that his "present condition is not permanent," or so shown, and sought to reserve other defenses to the policy that may exist. Plaintiff acted on such disallowance of his claim. Home Ins. Co. of New York v. Scharnagel, 227 Ala. 60, 148 So. 596. In the respects indicated, this case is different from the McGifford Case, supra.

The plaintiff, as a member in good standing of the Pioneer Insurance Club, had paid all the required dues and premiums from February 1, 1930, to March 1, 1934, was continuously of the class of persons insured under the group policy to the date of the trial, and on March 16, 1933, gave due proof on the company's form of his injury, which was within a reasonable time. Provident Life & Accident Ins. Co. v. Heidelberg, 228 Ala. 682, 154 So. 809.

The defendant recognized plaintiff as a member in good standing at all times, reissued to him a certificate of membership and assurance under the master policy, making two certificates of insurance given him on the respective dates of November 22, 1929, and December 1, 1932. The defendant should not be permitted to defeat plaintiff's claim for the failure to give (before December 1, 1932) *due proof* of his injury, *when, at all times, to the date of the trial, all premiums and dues were fully paid by assured.* This distinguishes this case from the facts of McCutcheon v. All States Life Ins. Co. (Ala. Sup.) 158 So. 729; New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075; McGifford v. Protective Life Ins. Co., 227 Ala. 588, 151 So. 349, and Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59, in which the decisions turned on the failure of the assured to furnish proof of disability "to the insurer" (the furnishing of such proof of disability constituting a condition precedent to waiver of premium payments under the contract) and the failure of payment of premiums due after the injury and to the time of the trial. Here, due proof was given (1) while the insured was a member, (2) with all premiums paid, and (3) while the insurance was in force.

The defendant was not entitled to the general affirmative charge on the theory that due proof of disability *was not seasonably given* to defendant during the life of the policy. Ex parte Gilbreath Gray (Prudential Ins. Co. v. Gray), 159 So. 265 (Ala. Sup.).

We recur to the question presented to this court under several cases before us, Protective Life Ins. Co. v. Cole, 161 So. 818, and Protective Life Ins. Co. v. Wallace, 161 So. 256.

It may be observed that it has been held that the question of whether or not an insured is totally and permanently disabled by bodily injury or disease from engaging in *any occupation* was one of fact for the jury. Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463; Equitable Life Assur. Soc. of the United States v. Wiggins, 115 Fla. 136, 155 So. 327, 328.

Within the definitions and application of our cases, what is the meaning of the contract terms employed, viz.: "If any member insured under this policy shall furnish this Company with *due proof* that before having attained the age of 60 years, he or she has *become totally and permanently disabled by bodily injury or disease*, and that he or she is then, and will be at all times thereafter, *wholly prevented thereby from engaging in any gainful occupation*, the Company will pay to such member in full settlement of all obligations hereunder as to such member's life, the amount of insurance in force hereunder on such member at the time of the approval by the Company of the *proofs as aforesaid*. This amount will be paid either in one sum six months after proof of disability has been established or in installments as hereinafter provided, beginning immediately *after proof of disability* has been established. For each $1,000.00 of insurance hereunder the amount of each installment shall be in accordance with the following table?" That is to say, we are to make application of the rule to the instant facts. They are, that plaintiff received severe injuries and as the result thereof he is rendered, not entirely helpless, but is unable to substantially do and perform the material acts necessary to the due and required prosecution of his occupation, as those of a "stove tender," in the customary and usual manner theretofore required and duly performed by him in the discharge of the duties of that employment. (Italics supplied.)

General forms of insurance contracts have been construed and applied by this court to the particular facts of each case. For examples: Travelers' Ins. Co. v. Plaster, supra, a case upon a policy of accident insurance containing the clause that, "'If such injuries' * * * shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation * * * the company will pay the sum set opposite such loss," etc.; Metropolitan Life Ins. Co. v. Blue, supra, a suit on an insurance policy using the words, "become totally and permanently disabled * * * so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit"; New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547, and Ellis v. N. Y. Life Ins. Co., 214 Ala. 166, 106 So. 689, suits on life insurance policies containing the terms, "wholly disabled," that he is and "will be presumably thereby, permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit." Like terms were also employed in a case against the same insurance company by McLean, 218 Ala. 401, 118 So. 753. In Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198, the policy therein involved contained the clause, "permanently, continuously and wholly prevented thereby from pursuing *any occupation whatsoever for remuneration or profit*." And in Equitable Life Assur. Soc. v. Dorricty (Ala. Sup.) 157 So. 59, 61, the contract terms employed were: "Disability shall be deemed to be total when it is of such an extent that the insured is prevented thereby from engaging in *any occupation or performing any work for compensation of financial value*." (Italics supplied.)

The terms of the instant contract are not more exclusive than the foregoing. It is well that we re-examine these cases for the application to be made to the instant facts.

In Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 610, 98 So. 909, 911, "total disability" in an accident policy is defined as being "a relative term, depending in a measure upon the character of the occupation and the capabilities of the insured, and to a large extent upon the circumstances of the particular case."

The foregoing announcement is quoted with approval in Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852, and in New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So. 547, where life policies were declared upon.

In Metropolitan Life Ins. Co. v. Blue, supra, it is said:

"Appellant calls attention to the definition of 'totally disabled,' in this policy, viz., 'so as to be prevented thereby from engaging in any occupation or work for compensation or profit,' and would construe this as negativing any liability, after it appears without dispute that he can and does perform some work without hurt.

"We do not construe the quoted clause as changing the general and accepted meaning of 'totally disabled.' Nor does the fact that this is a supplemental contract attached to a life policy call for a different construction. If life policies are framed and sold with provisions covering the field usually occupied by accident insurance, like terms must impose like obligations.

"'Prevented from engaging in any work or occupation,' as applied to this case, means

prevented 'from doing substantial and profitable work in his profession." 222 Ala. 665, 668, 133 So. 707, 710, 79 A. L. R. 852, 856.

In New York Life Ins. Co. v. Torrance, 224 Ala. 614, 617, 141 So. 547, 550, Mr. Justice Gardner declared: "A majority of the courts adhere to the liberal rule of construction that the 'total disability' contemplated in insurance policies does not mean, as its strict literal construction would require, a state of absolute helplessness, but means inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner (Metropolitan Life Ins. Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040 and note; Note 41 A. L. R. 1376; Note 24 A. L. R. 203; 1 Corpus Juris, 463), and this statement of the rule has been noted with approval by this court, United States Casualty Co. v. Perryman, supra. And in Metropolitan Life Ins. Co. v. Blue, supra, the court held that the words 'prevented from engaging in any work or occupation,' as then applied, meant 'prevented from doing substantial and profitable work in his profession.' "

Such was the rule as announced and applied in New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753, 754, where the suit was upon a life insurance policy, and the terms (as we have indicated) were "permanently and continuously prevented from engaging in *any occupation whatsoever for remuneration or profit."* (Italics supplied.)

In Jefferson Standard Life Ins. Co. v. Simpson, 228 Ala. 146, 153 So. 198, 200, Mr. Chief Justice Anderson observed of charges 1 and 2, refused to the defendant, that: "They attempted to hold the plaintiff to the literal language of the policy, and were too narrow. This court, in passing on provisions in policies similar to the one involved, has followed the majority rule to the effect 'that the "total disability" contemplated in insurance policies does not mean, as its strict literal construction would require, a state of absolute helplessness, but means inability to do substantially all of the material acts necessary to the prosecution of insured's business or occupation, in substantially his customary and usual manner.' New York Life Ins. Co. v. Torrance, 224 Ala. 614, 141 So 547, 550; New York Life Ins. Co. v. McLean, 218 Ala. 401, 118 So. 753; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; U. S. Casualty Co. v. Perryman, 203 Ala. 212, 82 So. 462."

This subject was likewise considered and announced on the last appeal in the Torrance Case, 228 Ala. 286, 153 So. 463, 464, as follows:

"The terms of the policy are that total disability must be such as that it 'thereby permanently and continuously prevented (him) from engaging in any occupation whatsoever for remuneration or profit.' If his physical or mental condition was such that his attempt to engage in an occupation was not accompanied with the ability to do so in its substantial features with the skill and accuracy which such business demands, in the usual and customary manner, he is totally disqualified from pursuing that occupation, though he does undertake to carry it on, but, in doing so, such want of skill and ability are [is] manifest.

"It is apparent to us that the Court of Appeals [153 So. 458] possessed and applied to the facts the same idea which we have, and which we had expressed on former appeal in respect to total disability as defined in the policy."

This question was later re-examined in Equitable Life Assur. Soc. v. Dorriety (Ala. Sup.) 157 So. 59, 61, quoting with approval the excerpt which we have reproduced above from the last appeal in the Torrance Case, 228 Ala. 286, 153 So. 463. Like conclusions were announced in John Hancock Mut. Life Ins. Co. v. Beaty (Ala. Sup.) 162 So. 281, and Protective Life Ins. Co. v. Wallace (Ala. Sup.) 161 So. 256. It is to be noted from these cases that a percentage of disability is not the test of liability in a suit on an insurance policy, but rests upon the fact that the plaintiff, by reason of his condition in question, is unable to do and perform substantially all of the material acts necessary to the prosecution of his occupation, in substantially his customary and usual manner. Such is the test and effect of recent announcements, and the application of the rule to suits on insurance policies. This statement of the rule is adopted by Mr. Justice Knight in Protective Life Ins. Co. v. Wallace, supra.

This question of fact, under the evidence and reasonable tendencies, in the opinion of the writer, was for the jury, and was properly submitted.

Plaintiff testified that he has not been able to do any work since his injury, and has not engaged in any occupation.

Dr. Magruder, a surgeon for one of the railroads and a man of large experience, was appointed by the court to examine plaintiff. He said plaintiff had good union, about one and one-half inches of shortening in the right leg due to loss of bone in the fracture; had some disturbance in the circulation of the leg, and the muscle in his thigh was soft and flabby from nonuse; along the outer side of his leg and heel he was very sensitive, due to neuritis, sensitive to the touch and causing him some pain; and from his observation the disability was about 35 per cent. of a permanent disability.

Dr. Carraway, a witness for defendant, said plaintiff had a good bone union; a shortening of the leg caused by something lacking that delayed the bone knitting together in the ordinary time. His testimony contained conflicting tendencies to the evidence adduced by plaintiff.

Dr. Sorrell, a witness for defendant, tended to present conflicting tendencies as to the extent of plaintiff's evidence. That is, there is positive and direct evidence that plaintiff's condition is such that he cannot do heavy manual labor required of a "stove tender" in discharging the duties of that employment in his (the) usual and customary manner; and the tendencies of evidence of Doctors Carraway and Sorrell are to the contrary. There is presented a conflict in the evidence or reasonable tendencies thereof, making the question of liability one for the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; New York Life Ins. Co. v. Torrance, 228 Ala. 286, 153 So. 463.

For the foregoing reasons, I respectfully dissent.

KNIGHT, J., concurs to the extent which he indicates as follows:

KNIGHT, Justice (dissenting in part).

I am of the opinion that the construction to be placed on the contract in question with reference to total disability is correctly stated in the foregoing dissent, and that the construction adopted in this case by the majority is contrary to the holding in the Simpson Case, supra, and other cases in line therewith, as indicated in the dissenting opinion of Mr. Justice THOMAS.